AO 91 (Rev. 11/11) Criminal Complaint            AUSA Misty N. Wright (312) 886-2061

**FILED**
**11/21/2020**
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JOSE LUIS OLIVA

CASE NUMBER: **20 CR 825**

### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about November 20, 2020, at Aurora, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | knowingly and intentionally possessed with intent to distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

_____
RONALD MCNEFF
Task Force Officer, Drug Enforcement Administration (DEA)

Pursuant to Fed. R. Crim. P. 4.1, this complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: November 21, 2020            _____
                                                     Judge's signature

City and state: Chicago, Illinois        YOUNG B. KIM, U.S. Magistrate Judge
                                                          *Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, RONALD MCNEFF, being duly sworn, state as follows:

1.    I am a Task Force Officer with the Drug Enforcement Administration ("DEA") and have been so assigned since approximately January 2018. I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. I have been employed as a police officer for the Aurora Police Department since 2012, where my current assignment is with the Special Operations Group as a Narcotics Investigator. Prior to the Aurora Police Department I was employed by the Plano Police Department for approximately 2 years.

2.    I have received training and have experience in investigating violations of federal narcotics and money laundering laws, including 21 U.S.C. §§ 841, 843, 846, 952, 959, and 963, and 18 U.S.C. § 1956(a). I have participated in numerous drug trafficking and money laundering investigations involving various investigative techniques, and I have been involved in the execution of numerous search warrants, arrests, and consent searches related to violations of federal law.

3.    This affidavit is submitted in support of a criminal complaint alleging that Jose Luis Oliva has violated Title 21, United States Code, Section 841(a)(1). Because this affidavit is being submitted for the limited purpose of establishing

probable cause in support of a criminal complaint charging OLIVA with possession with intent to distribute cocaine, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

4. This affidavit is based on, among other things, my personal knowledge; information given to me by other DEA agents and agents and officers with other law enforcement agencies; and my training and experience.

## PROBABLE CAUSE

5. On or about November 20, 2020, I received a call from Detective Darrel Moore of the Aurora Police Department. Detective Moore told me that Individual A had called the police and reported that OLIVA had told Individual A that he had guns and drugs in his residence, located on the 900 block of Bowditch Street in Aurora, Illinois (the "Oliva Residence"). Detective Moore told me that Individual A denied having personally seen the narcotics or firearms.

6. At approximately 2:18 p.m. that day, I spoke with Individual A over the telephone. During this conversation, Individual A reiterated the information Detective Moore had related to me but also stated that s/he personally saw a "short-handed 9mm gun" and a "rifle" in a bedroom of the Oliva Residence on November 18, 2020.

7. At approximately 3:30 p.m., I contacted OLIVA by telephone using a telephone number law enforcement had previously obtained for OLIVA. OLIVA

agreed to meet me near the intersection of Jericho Road and Terry Avenue in Aurora. At approximately 4:06 p.m., I and other law enforcement officers met with OLIVA and advised him of the information I received earlier that day. OLIVA told us that he did not have anything illegal at his residence and gave us consent to search the Oliva Residence, which is a duplex consisting of two units and an attached garage. OLIVA accompanied law enforcement officers to the Oliva Residence.

8.      At approximately 4:20 p.m., I and other law enforcement officers began searching the Oliva Residence. OLIVA was present during the search. In the second unit, which appeared to be being renovated, the living room and kitchen were empty apart from some painting and home repair items. Officers discovered that the door to the bedroom down the hallway to the left was locked. Officers asked OLIVA if he had a key to the bedroom. OLIVA initially responded, "I don't think so," but then retrieved keys from his pocket and said that he did have a key. OLIVA appeared extremely nervous as he opened the door and spontaneously stated, "Fuck, everything you're looking for is in there." Officers asked OLIVA if there were any firearms in the room, and OLIVA replied, "Yeah."

9.      Law enforcement officers detained OLIVA in handcuffs while they searched the bedroom.

10.     In the bedroom, which appeared to be the only room in the unit that contained clothing, bedding, and personal items, agents found the following items in the following locations, among other evidence:

a. In a backpack on a blow-up mattress, officers found approximately 21 grams of an off-white chunky substance, suspect cocaine, packaged in a clear, plastic knotted baggie; approximately 221 grams of a green leafy substance, suspect marijuana, packaged in a clear, vacuum-sealed bag containing three clear ziplock bags; approximately $16,000 in cash; a black HiPoint Model C9, 9mm semiautomatic pistol bearing serial number P1901238 with a loaded magazine attached; and an additional loaded magazine compatible with the pistol.

b. In a black toiletry bag next to the backpack on the mattress, officers found additional cash; approximately 310 grams of an off-white chunky substance, suspect cocaine, packaged in 4 clear, plastic knotted baggies; and a pill bottle containing miscellaneous pills. The substance inside one of the clear plastic baggies field tested positive for the presence of cocaine.

c. In the bedroom closet, officers found an open flat-screen television box. Inside the box was a black, short-barreled rifle with a loaded magazine attached. The rifle did not have a make, model, or serial number on it. On the top shelf of the bedroom closet, officers found two boxes of 9mm ammunition.

d. On the TV stand, officers found a digital scale, OLIVA's current driver's license, and OLIVA's expired driver's license. Under the TV stand, officers found plastic baggies, which, along with the scale, are suspect narcotics packaging paraphernalia. In a black shoebox under the TV stand, officers found clear jar and a clear plastic bag containing a green leafy substance, suspect marijuana.

      e.    In the room, officers found various documents such as mail in OLIVA's name.

11.    OLIVA was arrested and transported to the Aurora Police Department for processing. At approximately 6:37 p.m., OLIVA executed a written Miranda waiver and agreed to speak with officers. I, along with other law enforcement agents, conducted a video-recorded interview of OLIVA. During this interview, OLIVA said, in summary and in part:

      a.    OLIVA resides at the Oliva Residence part time, and when he stays there, he stays in the bedroom where the items were found. Until a few weeks ago, OLIVA resided there full time.

      b.    OLIVA purchased the rifle approximately 2 or 3 weeks ago from Individual B for $1,000.

      c.    OLIVA purchased the pistol and pistol ammunition from a white man in Yorkville three weeks ago for $300.

      d.    The off-white chunky substance officers found was cocaine. OLIVA was fronted all of the cocaine at the Oliva Residence from Individual B to sell. OLIVA recently sold two ounces of cocaine to narcotics customers for $1,600 per ounce.

      e.    Between $4,000 and $5,000 of the cash officers found was money OLIVA obtained from selling narcotics and intended to give to Individual B.

## CONCLUSION

12. As described above, I believe that there is probable cause to believe that, on or about November 20, 2020, JOSE LUIS OLIVA possessed with intent to distribute cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

*Ronald F. McNeff*
RONALD MCNEFF
Task Force Officer, Drug Enforcement Administration

SUBSCRIBED AND SWORN to before me on November 21, 2020.

Honorable YOUNG B. KIM
United States Magistrate Judge